UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| ALLTEL COMMUNICATIONS, LLC, | ) | CIV. 10-MC-00024 |
| | ) | |
| Plaintiff, | ) | ORDER |
| | ) | |
| vs. | ) | |
| | ) | |
| EUGENE DEJORDY, | ) | |
| | ) | |
| Defendant. | ) | |

Non-parties, the Gonzalez law firm ("Law Firm"), the Oglala Sioux

Tribe ("OST") and Joseph Red Cloud (collectively the "Tribe"), filed motions

to quash subpoenas duces tecum (Dockets 1 and 3) served by plaintiff Alltel

Communications, LLC ("Alltel").[1]  After briefing, a hearing was held on

December 2, 2010 (the "December 2 Hearing").  During the hearing, the

court ordered further briefing.  The motions are now ripe for resolution.

**BACKGROUND**

Attorney Eugene DeJordy ("DeJordy") was employed by Alltel and its

predecessors-in-interest from 1995 until November 2007.  (Docket 19, ¶¶ 4

and 5).  In August of 2000, DeJordy negotiated the Tate Woglaka Service

Agreement ("TWSA") with the Tribe and was the signatory on behalf of

Western Wireless, as its Vice President.  Id.; see also Docket 13-1.

---

[1]This action is in connection with a lawsuit pending in the Eastern
District of Arkansas, 4:10-cv-00130.

By a Separation and Release Agreement effective November 2, 2007, DeJordy left his employment with Alltel Communications, Inc., and received a severance package totaling $2,039,983, which was paid in a lump sum. (Docket 13-2).  As part of the consideration for that agreement, DeJordy agreed to not recruit Alltel employees for one year or support or assist legal actions against Alltel or its successors.  Id.

In February of 2010, Alltel sued DeJordy in federal district court in the Eastern District of Arkansas ("DeJordy litigation").  (Docket 13-6).  The allegations, among other things, included the following:

A.   In August of 2008, DeJordy recruited another Alltel employee, Tom Reiman, and they formed a new company–Native American Telecom Enterprises, LLC.  Id. at ¶¶ 19 and 20.

B.   DeJordy represented to Verizon and the Federal Communication Commission that the Tribe had established a telecommunication plan and wanted the divested assets from the Alltel-Verizon divestiture transferred over to the Tribe.  Id. at ¶¶ 26 and 27.

C.   DeJordy "support[ed] and assist[ed]" the Tribe in the lawsuits against Alltel over the TWSA, both in the federal district court and the OST Tribal Court case.  Id. at ¶¶ 28-31.

Alltel seeks the return of the $2 million severance package, attorney's fees, and other damages under the Severance and Release Agreement.  Id. at p. 13.  Trial in the DeJordy litigation is set for July 2011.  See Alltell Communications, LLC v. DeJordy, Eastern District of Arkansas, No. 4:10-cv-0130-BSM, Docket 16.

2

As part of the discovery in the DeJordy litigation, Alltel issued subpoenas to, among others:

1.     The Gonzalez Law Firm (and Attorney Debora DuBray);

2.     Joseph Red Cloud, individually and as an employee of the Oglala Sioux Tribe; and

3.     The Oglala Sioux Tribe.

("Subpoenaed Parties").  By agreement of counsel amended subpoenas were issued by Alltel following the December 2 Hearing adding one additional South Dakota limited liability company, Native American Telecom-Pine Ridge, LLC, within the definition of "Native American Telecom."  See Dockets 26, 27, and 29.[2]

The subpoenas seek documents for the time period of January 1, 2007, to June 22, 2010.  Id.  Although the three subpoenas request different combinations of groups of documents, they all focus on DeJordy, Mr. Reiman, Dakelyn Consulting,[3] and Native American Telecom (collectively the "DeJordy Group"), and concern the TWSA, the assets used to provide telecommunication services on the Pine Ridge Indian Reservation, disputes between the Tribe and any person concerning the TWSA, and the Tribe's

---

[2]Language from these amended subpoenas is used throughout this discussion, but they will be identified simply as the "subpoenas."

[3]A consulting business DeJordy established shortly after leaving Alltel to provide "legal, regulatory, . . . and business development consulting to communications companies and other entities."  (Docket 19, ¶ 1).

efforts to secure ownership of the telecommunication assets on the reservation (collectively the "TWSA Litigation and Assets").  The subpoenas all concern the TWSA Litigation and Assets and are summarized as follows:

1.    All communications, including e-mails, between the Subpoenaed Parties and the DeJordy Group;

2.    All offers, proposals . . . or statements of work made to the Subpoenaed Parties by the DeJordy Group;

3.    All contracts . . . and memoranda between the Subpoenaed Parties and the DeJordy Group;

4.    All reports . . . advice or documents provided to the Subpoenaed Parties by the DeJordy Group;

5.    All documents prepared on behalf of the Subpoenaed Parties by the DeJordy Group;

6.    All memoranda . . . records and/or notes from meetings or telephone conversations between the Subpoenaed Parties and the DeJordy Group;

7.    The Subpoenaed Parties' telephone records to show outgoing and incoming calls to and from the DeJordy Group.

Id. (summarized).

## THE MOTIONS TO QUASH

THE LAW FIRM

The Law Firm states that "[s]ince November 2009, the Firm has been advising and representing the Tribe in matters relating to issues involving the [TWSA], Eugene DeJordy, Native American Telecom, LLC and Alltel

. . . ." (Docket 7, p. 1).  It claims, however, that any documents in the Law Firm's possession are attorney-client privileged between the Tribe and the Law Firm.  Id. at 2.  On that basis, Attorney Gonzalez filed a privilege log. (Docket 7-1).  At the December 2 Hearing, Mr. Gonzalez represented that none of the documents identified in the privilege log are documents responsive to the subpoenas.  On the face of the privilege log it appears that Mr. Gonzalez's representation is complete.  However, Mr. Gonzalez agreed and the court ordered that he should respond in writing regarding any Law Firm computer records.

> I am going to ask Mr. Gonzalez that you file a declaration by the close of business on December 8 also responding to each of the numbered paragraphs, Requests For Production 1 through 3, and a subpoena served on the Gonzalez Law Firm in this matter. And if you have any further claims of privilege, that a log be filed in addition under 45(d)(2).

(Transcript of December 2 Hearing, p. 50:13-19 ("HT p. ___:_____")).  Mr. Gonzalez subsequently submitted a declaration (Docket 31-2) and a revised privilege log (Docket 31-1).  His declaration stated:

> That any documents created by the Firm after the reassignment [from Attorney Dubray to Attorney Gillis to Attorney Shultz] that have any relevance to Eugene DeJordy have been to inform the Oglala Sioux Tribe of his questionable dealings and potential conflicts of interest with regard to the [TWSA] that he negotiated on behalf of Western Wireless, LLC in 2001.

(Docket 31-2, ¶ 5).

5

THE TRIBE AND MR. RED CLOUD

Attorney Shultz represents OST and Mr. Red Cloud, individually, and as an employee of the tribe.  The Tribe claims sovereign immunity protects it from being compelled to comply with the subpoenas.  (Docket 4, p. 3). Because of the significant legal issues a sovereign immunity claim presents, the court ordered Mr. Shultz to confer with the Tribe and confirm its intention to assert sovereign immunity as a defense to the subpoenas.  (HT p. 29:10-19).  Consistent with those instructions, on December 3, 2010, Mr. Shultz advised the court and counsel the Tribe intended to assert the claim of sovereign immunity.

The Tribe's other claims are that any documents in the possession of the Tribe, including documents in the possession of Mr. Red Cloud in his capacity as an employee of the Tribe, are privileged as they relate to communications with DeJordy, a licensed attorney, who has "acted as a consultant to the Tribe, advising the Tribe on certain telecommunications issues on the Pine Ridge Indian Reservation."  (Docket 4, p. 3).  All communications relate to "the Tribe's relationship with Mr. DeJordy and/or the legal services and advice Mr. DeJordy provided to the Tribe."  Id.  Thus, it claims "all requested information is protected under the attorney-client privilege and/or the work product doctrine."  Id.

The Tribe claims the first request[4] "communications . . . between [the Tribe] and . . . DeJordy" are protected by the attorney-client privilege.  Id. at p. 3-4.  "Such communications were between the Tribe and its attorney, Eugene DeJordy, and were made for the express purpose of provide [*sic*] legal advice to the Tribe regarding certain telecommunications issues."  Id. at p. 5.  The Tribe asserts the other documents requested[5] relate to "Mr. DeJordy's employment by the Tribe."  Id.

At the December 2 Hearing, the Tribe asserted Mr. DeJordy was a non-testifying expert consulting with the Tribe in the litigation between Alltel and the Tribe in both federal and tribal court.  (HT, pp. 24:25-25:1-7).  "The documents . . . were all prepared by the Tribe or Mr. DeJordy, and all relate to the pending litigation [OST Tribal Court, Federal District Court (South Dakota) and the American Arbitration Association]."  (Docket 4, p. 5).  The Tribe claims these documents are "protected from disclosure under the work product doctrine."  Id.

At the hearing, Mr. Shultz suggested Mr. Red Cloud possessed no documents in his individual capacity.  (HT pp. 22:24-25-25:1-9).  Rather, all documents were obtained or created in Mr. Red Cloud's official capacity as an employee of the Tribe.  Id.  Again, out of an abundance of caution, the

---

[4]Request 1 is summarized on page 4.

[5]Requests 2, 3, 4, and 5 are summarized on page 4.

court ordered Mr. Shultz and Mr. Red Cloud to complete a further review of the Red Cloud subpoena, to determine if Mr. Red Cloud as an individual possessed any documents which may be subject to discovery.  (HT pp. 39:19-41:22).  Mr. Red Cloud's declaration was subsequently filed.  (Docket 30-1).  As part of his declaration, Mr. Red Cloud stated "[a]ll documents sought by Alltel . . . are documents kept and maintained by me only in my official capacity as an employee and representative of the Tribe . . . ."  Id. at ¶ 7.

## ANALYSIS

Rule 1 of the Federal Rules of Civil Procedure provides "[t]hese rules govern the procedure in all civil actions and proceedings in the United States district courts . . . . They should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Rule 34 is the starting point for the production of documents in any litigation.  The rule states that "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."  Fed. R. Civ. P. 34(c).  Rule 45 provides that any subpoena is required to "(i) state the court from which it issued; (ii) state the title of the action, the court in which it is pending, and its civil-action number; (iii) command each person to whom it is directed to do the following at a specified time and place; . . . produce designated documents . . . ; and (iv) set out the text of Rule 45(c) and (d)."  Fed. R. Civ. P. 45 (a)(1)(A).  For the

8

production of documents, the subpoena must be issued "from the court for the district where the production . . . is to be made." Fed. R. Civ. P. 45(a)(2)(C). These requirements have been met by Alltel in the issuance of the subpoenas presently before the court. <u>See</u> Dockets 1-1, 13-7, 13-8, 26, 27, and 29.

Rule 45(c)(3)(A) establishes the method by which non-parties may challenge a subpoena. "On timely motion, the issuing court must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." Fed. R. Civ. P. 45(c)(3)(A). The motions to quash were timely filed. When a motion to quash is filed,

> [a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Rule 45(d)(2)(A). Neither Mr. Red Cloud nor the Tribe submitted a privilege log as required by Rule 45(d)(2)(A). Mr. Shultz argued during the hearing that a privilege log was not filed because sovereign immunity trumps any obligation to comply with Rule 45(d)(2)(A). (HT 24:18-24).

9

"A party receiving a discovery request who asserts a privilege . . . but fails to disclose that claim is at risk of waiving the privilege . . . ." Fed. R. Civ. P. 45 advisory committee's note (1991).  "The person claiming a privilege . . . cannot decide the limits of that party's own entitlement." Id. The "purpose [of the rule] is to provide a party whose discovery is constrained by a claim of privilege or work product protection with information sufficient to evaluate such a claim and to resist if it seems unjustified." Id.  "A person claiming a privilege . . . who fails to provide adequate information about the privilege . . . claim to the party seeking the information is subject to an order to show cause why the person should not be held in contempt under subdivision (e)."  Id.

Alltel objects to the Tribe's motion to quash for failure to file a privilege log.  (Docket 13, p. 2).  Plaintiff did not, however, seek the contempt authority vested in the court by Rule 45(e) for this deficiency. Rather, Alltel argues that none of the three asserted privileges provide any protection to the Tribe in its relationship with the DeJordy Group.  (Docket 13).

There is a split of authority over the implications of the failure to file a privilege log.  "Rule 45(d)(2) (A)'s requirement of a privilege log is mandatory . . . . "  Mosley v. City of Chicago, 252 F.R.D. 445, 449 (N.D. Ill. 2008). "[N]on-parties under Rule 45 have a choice: they can either prepare a privilege log or waive any claim of privilege." Id. at 449, n. 5.  "Without

producing a privilege log, [the subpoenaed nonparty] cannot avail itself of the attorney-client privilege and its attempt to resist the Subpoena on this basis is also unsuccessful." Teton Homes Europe v. Forks RV, No. 1:10-CV-33, 2010 WL 3715566 * 3 ( N.D. Ind. Sept. 14, 2010). "Waiver is appropriate where the responding party's conduct evinces a 'deliberate pattern of delay' and is 'egregious.' " In re Department of Justice Subpoenas to ABC, 263 F.R.D. 66, 71 (D. Mass. 2009).

The opposing view is that a court should use a three-part reasonableness test to determine whether waiver exists. Id. at 71-72. The factors are:

> (1)  the degree to which the objection or assertion of privilege enables the litigant seeking discovery . . . to evaluate whether each of the withheld documents is privileged . . . ;
>
> (2)  the timeliness of the objection and accompanying information about the withheld documents . . . ;
>
> (3)  the magnitude of the document production and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard.

Id. at 71. "The Court considers these factors in the context of a holistic reasonableness analysis." Id. (internal quotation marks omitted). "Waiver should only be found in the absence of mitigating considerations that favor the subpoenaed party." Id. (internal quotation marks omitted).

The court finds the Tribe, in good faith and in a timely manner, asserted its claim of sovereign immunity.  A claim which, without a privilege log, could be accepted by the court and result in a blanket protection for all documents possessed by the Tribe.  Under the unique circumstances of this non-party motion to quash proceeding, the burden imposed on the Tribe in producing a privilege log in order to avoid a waiver claim may be unduly time consuming and burdensome.[6]  There is "no rule [which] prevents the court from waiving the privilege log requirement to reduce a nonparty's burden."  Perry v. Schwarzenegger, 268 F.R.D. 344, 353 (N.D. Cal. 2010).  Applying a "reasonableness analysis," the court concludes the privileges asserted by the Tribe and Mr. Red Cloud were not waived as of the December 2 Hearing.

TRIBAL SOVEREIGN IMMUNITY

"It is well established that Indian tribes possess the same common-law immunity from suit traditionally enjoyed by sovereign powers."  Val-U Construction Company of South Dakota v. Rosebud Sioux Tribe, 146 F.3d 573, 576 (8th Cir. 1998) (citing Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978)).  "The general rule is that a suit is against the sovereign if 'the

_____

[6]Rule 45(c)(1) specifically contemplates that a party responsible for "a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(c)(1).  In fact, the rule contemplates that the court may "enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party . . . who fails to comply."  Id.

judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' . . . or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' " Dugan v. Rank, 372 U.S. 609, 620 (1962) (citing Land v. Dollar, 330 U.S. 731 (1947) and Larson v. Domestic & Foreign Corp., 337 U.S. 682, 704 (1949)).

"A tribe's sovereign immunity extends to its agencies." Ferguson v. SMSC Gaming Enterprise, 475 F. Supp. 2d 929, 930 (D. Minn. 2007) (citing Hagen v. Sisseton-Wahpeton Community College, 205 F.3d 1040, 1044 (8th Cir. 2000) (sovereign immunity extends to tribal college). Similarly, with only limited exceptions not applicable to this case, immunity extends to tribal officials acting in their official capacity and within their scope of authority. See Baker Electric Cooperative v. Chaske, 28 F.3d 1466, 1471 (8th Cir. 1994) ("the dispositive issue before this court is whether the Tribe had the authority to enact the Tribal Utilities Code: If yes, the tribal officers are clothed with the Tribe's sovereign immunity; if no, then the sovereign immunity defense must fail. . . ."); Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community, 991 F.2d 458 (8th Cir. 1993) ("If the sovereign did not have the power to make a law, then the official by necessity acted outside the scope of his authority in enforcing it, making him liable to suit.") (citation omitted); Kennerly v. United States, 721 F.2d 1252 (9th Cir. 1983) (tribal defendants acting in their official capacity

are protected by immunity); Davis v. Littell, 398 F.2d 83, 85 (9th Cir. 1968) ("The need for absolute privilege is in the elimination of the constant dread of retaliation for injury committed in the course of duty and the allowance of unflinching discharge of (official) duties free from the threat of suit and charge of malice.") (internal quotation marks omitted); Barr v. Matteo, 360 U.S. 564, 574 (1959) (agency director's "plea of absolute privilege . . .  in [acting within his official capacity] . . . must be sustained."). "The doctrine of sovereign immunity . . . does not [extend to] the individual members of the Tribe." Puyallup Tribe, Inc. v. Department of Game of State of Washington, 433 U.S. 165, 171-72 (1977) (internal citation omitted).

The Tribe asserts its sovereign immunity also protects it, as a non-party to this litigation, from being obligated to comply with a federal subpoena.  (Docket 4, p. 3).  The Tribe cites Catskill Development, LLC v. Park Place Entertainment Corp., 206 F.R.D. 78, 86 (S.D. N.Y. 2002) and United States v. James, 980 F.2d 1314 (9th Cir. 1992) in support of its position.  (Docket 4, pp. 2-3).

The federal district court in Catskill Development concluded that sovereign immunity protected the tribe from enforcement of a federal civil subpoena.  The court began by acknowledging the Court of Appeals for the Second Circuit has "not addressed the issue of non-party supbpoenas and sovereign immunity in the tribal context . . . ." Catskill Development, 206 F.R.D. at 87.  It then compared, on an equal status, tribal immunity with

14

the sovereign immunity of the United States.  Id.  "A proceeding is against
the sovereign in this sense if, among other things, the result could serve to
restrain the Government from acting, or to compel it to act."  Id. (citing
Dugan, 372 U.S. at 620) (internal quotation marks omitted).

The Catskill Development court accepted dicta from the Second
Circuit in United States Environmental Protection Agency v. General Elec.
Co., 197 F.3d 592, 597 (2d Cir.1999), *vacated in part on other grounds*, 212
F.3d 689 (2000), which concluded that "the enforcement of this subpoena
duces tecum issued by General Electric to the EPA would compel the EPA to
act and therefore is barred by sovereign immunity in the absence of a
waiver."  Catskill Development, 206 F.R.D. at 87 (citing General Elec., 197
F.3d at 597).

The Catskill Development court also relied heavily on United States v.
James, 980 F.2d 1314 (9th Cir. 1992).  Id. at 86 and 88.  In doing so, it
rejected a "balancing analysis" which was used by the federal district court
in United States v. Velarde, 40 F. Supp. 2d 1314 (D.N.M. 1999), *remanded
on other grounds*, 214 F.3d 1204 (10th Cir. 2000).  Id. at 88.

James was a federal criminal prosecution under the Major Crimes
Act, 18 U.S.C. § 1153, in which the Native American defendant obtained a
subpoena duces tecum from the district court seeking production of the
alleged rape victim's alcohol and drug counseling records.  James, 980 F.2d

at 1319.  On motion of the tribe, the district court quashed the subpoena duces tecum on tribal immunity grounds.  Id.

The Ninth Circuit Court of Appeals affirmed the district court ruling. Id.  In reaching that decision, the court relied exclusively on its conclusion that 18 U.S.C. § 1153, Offenses committed within Indian Country, did not contain "an express and unequivocal waiver of immunity."  James, 980 F.2d at 1319.  "By making individual Indians subject to federal prosecution for certain crimes, Congress did not address implicitly, much less explicitly, the amenability of the tribes to the processes of the court in which the prosecution is commenced."  Id.  "Thus, the mere fact that a statute, 18 U.S.C. § 1153(a), grants jurisdiction to a federal court does not automatically abrogate the Indian tribe's sovereign immunity."  Id.

The analysis and conclusion in James and Catskill Development on this issue has been criticized and rejected by a number of courts and scholarly writers.  Often quoted for the opposite view is United States v. Juvenile Male 1, 431 F. Supp. 2d 1012 (D. Ariz. 2006).  Addressing whether a federal subpoena in a criminal case could compel compliance by a tribe's custodians of records, the district court in Juvenile Male 1 addressed sovereign immunity.

> This immunity protects a tribe as an entity from unconsensual civil actions against it.  The service of a federal subpoena on an employee of an entity of a tribe is neither a suit, nor one against a tribe.  For example, the United States enjoys sovereign immunity from suit without its consent.  And the states of the Union enjoy

16

> immunity from suit without their consent. But it can hardly be contended that federal or state sovereign immunity from suit has any application to the enforcement of a federal subpoena on the custodian of records of a state or federal agency. Federal subpoenas routinely issue to state and federal employees to produce official records or appear and testify in court and are fully enforceable despite any claim of immunity. <u>See</u>, <u>e.g.</u>, <u>Exxon Shipping Co. v. United States Dep't of Interior</u>, 34 F.3d 774, 778 (9th Cir. 1994). Even the President of the United States must comply with a federal subpoena. <u>United States v. Nixon</u>, 418 U.S. 683, 713 (1974). It would be strange indeed if a federal subpoena were operative against the greater sovereign and its officers but not the lesser. <u>See</u> <u>Cherokee Nation v. Southern Kan. Ry. Co.</u>, 135 U.S. 641, 656 (1890).

<u>Id.</u> at 1016-17. "The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense." <u>Id.</u> at 1017 n. 1 (citing <u>Nixon</u>, 418 U.S. at 709).

In responding to <u>James</u>, the court in <u>Juvenile Male 1</u> observed "[a]lthough the [<u>James</u>] court acknowledged that tribal immunity does not extend to individual members, it did not discuss how tribal immunity from suit extended to a case in which the tribe was not a party and no suit was filed against it." <u>Id.</u> at 1018. In <u>Juvenile Male 1</u>, Sixth Amendment claims were raised, while in <u>James</u> the claim of sovereign immunity was not considered in light of any constitutional issue. <u>Id.</u> "The mischief caused by

17

an extension of immunity beyond its purpose was neither presented to nor considered by the court in James." Id.

In the Court of Appeals for the Eighth Circuit, it has long been recognized that a federal grand jury subpoena must be honored in Indian country.  The court in In re Long Visitor, 523 F.2d 443 (8th Cir. 1975) declared:

> While federal abrogation of Indian retained sovereignty is not lightly presumed, . . . we cannot conclude otherwise than that the extension by Congress of federal jurisdiction to crimes committed on Indian reservations inherently includes every aspect of federal criminal procedure applicable to the prosecution of such crimes. This is particularly true of a federal grand jury, which is an arm of the district court through which it derives its power.

Id. at 446-47 (internal citations omitted).  "An Indian reservation provides no sanctuary from the reach of a federal subpoena to compel testimony before a grand jury on matters within the jurisdiction of the District Court." Id. at 447.

The rationale of the Long Visitor decision was part of the basis for the district court's rejection of James in United States v. Velarde, 40 F. Supp. 2d 1314 (D.N.M. 1999).

> I disagree with the James conclusion. . . .The James court did not take into account the duty of this Court, as well as tribal police and other tribal officials, to comply with federal statutory and constitutional protections. . . . I find that the proper procedure is to balance the sovereign interests of the United States and the Tribe.

Id. at 1315-16 (internal citations omitted).  "[C]ourts often perform this type of balancing where sovereign immunity is asserted in an effort to quash a subpoena."  Id. at 1316.  The Velarde court considered that balancing test to be:

> [i]n balancing the sovereign interests, I look first to the interest of the United States in seeing that the Major Crimes Act is enforced, coupled with this Court's interest in seeing that Defendant's constitutional rights of due process and a fair trial are protected. If these interests are substantial enough to justify an infringement of tribal sovereignty, I will then examine the Tribe's interests to determine whether the subpoenas should nonetheless be quashed to protect an important tribal interest.

Id. (internal citation omitted).  "Enforcement of the Major Crimes Act has been held to provide the federal courts with a sufficient interest to justify implied abrogation of sovereignty in order to serve a federal subpoena on the reservation.  See Long Visitor, 523 F.2d at 446-47."  Id.  The court also "conclude[d] that the Court's interest in protecting Defendant's constitutional rights justifies an intrusion upon tribal sovereignty in order to enforce a subpoena on behalf of Defendant."  Id.

The Velarde court then considered the tribal sovereignty issues for resisting a subpoena.  Velarde, 40 F. Supp. 2d at 1317.  "First, I note that Federal Rule of Criminal Procedure 17(e)(1) allows for service of a subpoena on the reservation.  See also Long Visitor, 523 F.2d at 447."  Id.  "The tribal treasury is not implicated (as it would be, for example, if the tribe were subject to a civil suit), and the information sought is not critical to tribal

self-government or tribal self-sufficiency." Id.  In conclusion, the court held
"the Court's interests in seeing that federal law is enforced and that
Defendant's constitutional rights are protected outweigh any residual
sovereign immunity that the Tribe might enjoy . . . . I agree with the
approach taken by the courts in . . . Long Visitor, . . . and I reject the overly
simplistic analysis of James."  Id.

A comparative analysis to Eleventh Amendment[7] claims of state
sovereignty produce a result consistent with the logic of the Juvenile Male 1
line of authority.  The Court of Appeals for the Eighth Circuit, while not
addressing tribal immunity as a bar to compliance with a federal subpoena,
has examined Eleventh Amendment immunity claims relating to the service
of a subpoena.  See In re Missouri Department of Natural Resources, 105
F.3d 434 (8th Cir. 1997).  In that case, the Missouri Department of Natural
Resources ("MDNR") resisted a non-party subpoena on the basis of Eleventh
Amendment immunity.  Id. at 436.  In affirming the district court's denial of
the motion to quash, the Eighth Circuit held:

> MDNR has not shown how production of these documents
> infringes on the State of Missouri's autonomy or threatens its
> treasury.  Governmental units are subject to the same discovery
> rules as other persons and entities having contact with the federal

---

[7]The Eleventh Amendment provides: "[t]he Judicial power of the United
States shall not be construed to extend to any suit in law or equity,
commenced or prosecuted against one of the United States by Citizens of
another State, or by Citizens or Subjects of any Foreign State."  U.S. Const.
Amend. XI.

20

courts. <u>United States v. Procter & Gamble</u>, 356 U.S. 677, 681 (1958). There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court.

<u>Id.</u>

The Court of Appeals for the Seventh Circuit reached a similar result in a writ of habeas corpus *ad testificandum* proceeding.

The writ sought in this case would if granted be like an order commanding a state official who is not a party to a case between private persons to produce documents in the state's possession during the discovery phase of the case; such orders, because they do not compromise state sovereignty to a significant degree, cf. <u>Tennessee Student Assistance Corp. v. Hood</u>, 541 U.S. 440 (2004) . . . do not violate the Eleventh Amendment.  <u>See</u> <u>In re Missouri Dep't of Natural Resources</u>, 105 F.3d 434, 436 (8th Cir.1997); <u>Allen v. Woodford</u>, 544 F. Supp. 2d 1074, 1078-79 (E.D. Cal. 2008).

<u>Barnes v. Black</u>, 544 F.3d 807, 812 (7th Cir. 2008) (other internal citations omitted).

"Eleventh Amendment immunity refers to assertions of liability on the State's part to prevent federal-court judgments that must be paid out of the State's treasury." <u>Allen v. Woodford</u>, 543 F. Supp. 2d 1138, 1142 (E.D. Cal. 2008) (referencing <u>Hess v. Port Authority Trans-Hudson Corp.</u>, 513 U.S. 30, 48 (1994)).  "The Non-Parties' reliance on various authorities that concern the State's immunity from suit are inapposite because neither the state nor a state agency are named in the suit." <u>Id.</u>  "Further, a request that [state agency] non-party officers/custodians of records produce documents does not raise the possibility of a judgment against the State that would have to

21

be paid from its treasury or subject the State to a claim for relief." Id. at

1142-43.  "If the court adopts the Non-Parties' position that the Eleventh

Amendment sovereign immunity applied to a state employee in his or her

official capacity, then Eleventh Amendment immunity arguably would bar

discovery of State documents relevant to Plaintiff's claims . . . ." Id. at 1143.

The court rejected the non-parties' assertion of Eleventh Amendment

immunity.  Id.

In a motion to quash subpoenas proceeding brought on by the state of

Washington, as a non-party, the district court looked to the Eleventh

Amendment immunity defense and rejected that defense.

> [Plaintiff] cites several cases from other Circuits and other district
> courts within the Ninth Circuit that have each rejected the
> argument made by [James]. . . . In re Missouri Dept't of Natural
> Resources, 105 F.3d 434, 436 (9th Cir. 1977) . . . Barnes v. Black,
> 544 F.3d 807, 812 (7th Cir. 2008) . . . United States v. Juvenile
> Male 1, 431 F. Supp. 2d 1012, 1016 (D. Ariz. 2006) . . . .
> Furthermore, courts have rejected as irrelevant the State's
> argument for applying a state's sovereign immunity because "no
> judgment or other relief of any kind is sought against" the state,
> which would invoke Eleventh Amendment protections.  Allen v.
> Woodford, 544 F. Supp. 2d 1074, 1079 (E.D. Cal., 2008) . . . .

Wilson v. Venture Financial Group, Inc., No. C09-5768BHS, 2010 WL

4512803 * 1-2 (W.D. Wash. Nov. 2, 2010).

Joshua Kanassatega, an Assistant Professor of Law and Director of

the Indian Law Program at Gonzaga University School of Law, concludes

James and Catskill Development, are "misguided" because:

1.   They fail to utilize the existing balancing tests used to excuse high ranking government officials from giving deposition testimony;

2.   They fail to properly apply Fed. R. Civ. P. 45(c)(3)(A) and to consider the policies underlying the rule;

3.   They wrongly analogized the sovereignty and immunity of the United States to Indian tribal sovereignty and tribal immunity; and

4.   As a federal policy matter, the federal court's application of the "discovery immunity exception" undermines Indian tribal sovereignty.

Joshua Jay Kanassattega, The Discovery Immunity Exception in Indian Country -- Promoting American Indian Sovereignty By Fostering the Rule of Law, 31 Whittier L. Rev. 199 (2009) (summarized).  Professor Kanassattega's analysis looks to the United States Supreme Court for some general guidance on this issue.

> In the 1986 case Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, the Court articulated a concept of limitations on the federal common law immunity that the Indian Tribes possessed.  While recognizing that common law immunity was a "necessary corollary to Indian sovereignty and self-governance," the Court, in passing, noted that because Indian Tribes possessed only quasi-sovereignty, such immunity is not congruent with the immunity possessed by the United States or the several states.  More ominously, the Court added, "this aspect of tribal sovereignty, like all others, is subject to plenary federal control and definition."

Kanassattega, supra at 240-41 (citing Three Affiliated Tribes, 476 U.S. 877, 890-91 (1986) (citing Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978)

and United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 513 (1940)).

"The 'public interest in the search for truth' likely outweigh[s] the Indian tribe's interests to enhance the probability that its corporate entity would prevail in the outcome by keeping [a party] from accessing information to support its claim." Id. at 266. "Application of the discovery immunity exception not only prevents a party from access to [relevant] information, but it creates a huge hole in FRCP 26(b)(1) as it carves out an immunity-based exception that applies only when that information is sought from a non-party who is either an Indian tribe, tribal agency, tribal official or employee." Id. at 268. "[T]he costs of exercising tribal immunity to defeat otherwise valid federal process in the face of the threat of abrogation of the doctrine far outweighs any short-term benefit to be gained by refusing to produce some document . . . relevant to a party's claim . . . ." Id. at 272.

The court does not take lightly the Tribe's sovereign immunity. Tribal sovereignty and immunity from suit are important elements in the Tribe's self-governance and self-preservation. Similarly, the potential for economic and social costs to the Tribe by the diminishment of its sovereign immunity are well known to all who practice law in Indian country.

It is against this background the court must conclude tribal sovereign immunity constitutes no shield for the Tribe, as a non-party, to justify

noncompliance with a federal civil subpoena duces tecum.  The Tribe is neither a party to the underlying litigation in Arkansas, nor is the tribal treasury exposed to an adverse judgment.  Dugan, 372 U.S. at 620; Juvenile Male 1, 431 F. Supp. 2d at 1016; Allen, 544 F. Supp. 2d at  1079.  Additionally, the service of a subpoena duces tecum on Mr. Red Cloud, as an employee of the Tribe, is not litigation against the Tribe.  Juvenile Male 1, 431 F. Supp. 2d at 1016.[8]  "Federal subpoenas routinely issue to state and federal employees to produce official records or appear and testify in court and are fully enforceable despite any claim of immunity."  Id.

The court agrees with the analysis and logic of Professor Kanassattega.  Granting the Tribe's motion to quash these subpoenas on the basis of tribal immunity would create an exception to Rule 26(b)(1) that only would be available to a tribe, tribal agency, official or employee.  Kanassattega, supra at 268.  "It would be strange indeed if a federal subpoena were operative against the [federal government] and its officers but not [a tribe].  Juvenile Male 1, 431 F. Supp 2d at 1017.

---

[8]The rationale of the court in Juvenile Male 1 was strongly endorsed by the magistrate judge in the District of North Dakota in Silbernagel v. Standing Rock/Fort Yates Community, No. 1:08-cv-012, 2008 WL 2511730 *2 n. 2 (D.N.D. June 18, 2008).

The balancing test should consider the interests of a claim of immunity against the search for the truth contemplated by the Federal Rules of Civil Procedure.

> It is particularly troubling that the courts . . . never made an inquiry into whether the Indian tribe or subpoenaed person had any substantial interest in the outcome of the litigation.  Notions of fundamental fairness are implicated if a federal court sits idly by while a person moves the court to modify or quash a subpoena, the outcome of which could deprive a party to the underlying case of non-privileged information relevant to her or his claim or defense.   But, that is the natural consequence of a court's decision, and <u>this result should be unacceptable if it permits someone with a direct personal interest in the outcome or one aligned with the subpoenaed party to withhold critical information from a party</u>.

Kanassattega, *supra* at 265-66 (emphasis added).

In balancing the interests at issue here, it is evident the Tribe has an interest, both legally and financially, in the outcome of the inquiry into its relationship with the DeJordy Group.  To allow the Tribe to advance its interests while denying Alltel access to information to pursue its claims against DeJordy is contrary to the goals and purposes of the Federal Rules of Civil Procedure.

Any claim by the Tribe that there is or may be a potential, substantial economic cost in employee or attorney time to provide the discovery requested in the subpoena duces tecum issued under the authority of the court can be minimized or eliminated by Rule 45(c)(1).  That rule

contemplates that any unusual or unreasonable cost to the Tribe to comply with the subpoenas may be imposed against Alltel.  Fed. R. Civ. P. 45(c)(1).

For these reasons, the Tribe's motion to quash on the basis of tribal sovereign immunity is denied.

ATTORNEY CLIENT PRIVILEGE

In a diversity action, state law determines both the existence and scope of the attorney-client privilege.  Lamar Advertising of S.D., Inc. v. Kay, 267 F.R.D. 568, 574 (D.S.D. 2010).  "The party asserting a privilege with regard to items sought in discovery has the burden of demonstrating a factual basis for the privilege."  Id.  The proponent of a claim of privilege bears the burden of demonstrating a factual basis for the attorney-client privilege.  Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997) ("Crane met its burden of providing a factual basis for asserting the privileges when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its general counsel.  See Zar v. South Dakota Bd. of Examiners of Psychologists, 976 F.2d 459, 463-64 (8th Cir. 1992).").

In South Dakota, a  communication is protected by the attorney-client privilege if the following four elements are met:

(1)     a client;

(2)     a confidential communication;

      (3)    the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and

      (4)    the communication was made in one of the five relationships enumerated in S.D.C.L. § 19-13-3.

<u>Lamar Advertising of S.D., Inc.</u>, 267 F.R.D. at 574-75.  SDCL § 19-13-3 provides:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

      (1)    between himself or his representative and his lawyer or his lawyer's representative;

      (2)    between his lawyer and the lawyer's representative;

      (3)    by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;

      (4)    between representatives of the client or between the client and a representative of the client; or

      (5)    among lawyers and their representatives representing the same client.

SDCL § 19-13-3.

<u>THE LAW FIRM</u>

Attorney Gonzalez and the Law Firm, while clearly legal counsel for the Tribe, have no attorney-client relationship with DeJordy[9] or the DeJordy Group.  The Law Firm argues that "[t]he Firm and its attorney's [*sic*] have been and continue to protect the interests of the Tribe <u>against</u> any efforts of Eugene DeJordy, his associates and his business proposals."  (Docket 31, p. 2) (emphasis added).  <u>See also</u> Docket 31-2, ¶ 5 ("any documents created by the Firm . . . have been to inform the Oglala Sioux Tribe of [DeJordy's] questionable dealings and potential conflicts of interest with regard to the [TWSA] . . . .").  The Law Firm has not produced any evidence to suggest, let alone carry its burden of proof, that an attorney-client relationship existed with DeJordy.  <u>Rabushka</u>, 122 F.3d at 565.  The court's initial interpretation of DeJordy's relationship with the Tribe has not changed:

> DeJordy has repeatedly denied that he was counsel for the tribe or Mr. Red Cloud or associated with Gonzalez Law Firm as legal counsel, if he's not an attorney in the setting by the movants here, then there can be no attorney-client privilege because he's not an attorney with an attorney-client privilege.

(HT p. 11:19-24).

---

[9]The Tribe made a separate, belated claim at the hearing that Mr. DeJordy is a retained, non-testifying consultant for the Tribe in its separate litigation with Alltel.  That claim will be addressed later in this decision.

The subpoena issued to the Law Firm requests documents during the time period of January 1, 2008, through June 22, 2010.  (Docket 26, p. 3). The subpoena specifically seeks the following documents:

Request No. 1:   Any and all documents, including e-mails containing or reflecting communications between the Law Firm and the DeJordy Group relating to the TWSA Litigation and Assets;

Request No. 2:   Any and all memoranda, calendar entries, and/or notes from any meeting, telephone conversations or other interaction with the DeJordy Group relating to the TWSA Litigation and Assets; and

Request No. 3:   Any and all documents prepared by or at the request or pursuant to guidance or advice from the DeJordy Group and related to the TWSA Litigation and Assets.

(Docket 26) (summarized).  The court specifically directed that Mr. Gonzalez's post-hearing declaration respond "to each of the numbered paragraphs, Requests For Production 1 through 3" of the subpoena served on the Law Firm.  (HT p. 50:13-19).  Neither Mr. Gonzalez nor the Law Firm complied with that order.

Rather, the Law Firm submitted a revised privilege log.  (Docket 31-1). That privilege log contains no entries prior to August of 2009 and seems to address only "documents created by the Firm after the reassignment" of the file to Attorney Shultz.  (Docket 31-2, ¶ 5) (emphasis added).  Mr. Gonzalez and the Law Firm provide no explanation for the failure to comply with the court's directive and the date-specific requests.

Only two entries on this privilege log contain references to DeJordy. Identifying those items by the corresponding privilege log entries, the court believes the following entries, or at least part of those "email trains," may be outside of the attorney-client privilege:

| Entry | Bates Number | Date |
|-------|-------------|------|
| 1 | 100001-10003 | 3/15/2010; and |
| 10 | 100067 | 3/16/2010. |

(Docket 31-1).

Alltel asserts that entries 4, 5 and 6 of the revised privilege log refer to its attorney, Mr. Wieczorek, and a legal secretary, Ms. Cook. (Docket 33, p. 7). Alltel also asserts entry 7 includes individuals who would not be within the scope of any attorney-client relationship with the Tribe, namely: John Schreiber, a Verizon Wireless employee; Reann Kelsch, a former Alltel employee; Rohan Ranaraja, a former Alltel employee; and Michael Copps, a FCC Commissioner. Id. Alltel further objects to the revised privilege log because it includes people not known to Alltel. Id.

While the court recognizes a number of the identified individuals as tribal counsel members or employees, it does not recognize all of the names listed. To assist the court in further analysis of the revised privilege log, Mr. Gonzalez shall submit another declaration identifying each person and their specific relationship, if any, with the Law Firm, the Tribe, or an entity arguably within the scope of the privilege claims.

31

Communications with persons or entities where the Law Firm has no attorney-client relationship are not entitled to protection under the privilege. See In re Grand Jury Proceedings Subpoena to Testify: Wine & Luckow, 841 F.2d 230, 234 (8th Cir. 1988) ("Any claim of attorney-client privilege has been waived by the prior disclosure of these documents to third-parties. . . . Voluntary disclosure is inconsistent with the confidential attorney-client relationship and waives the privilege."); See also State v. Catch the Bear, 352 N.W.2d 640, 647 (S.D. 1984).

Pending the further declaration by Mr. Gonzalez, the Law Firm should deliver copies of entries 1, 4, 5, 6, 7 and 10, in their entirety, to the court's chambers for an *in camera* review.  See Kilpatrick v. King, 499 F.3d 759, 766 (8th Cir. 2007) ("If the party makes that threshold showing, the district court may review the allegedly privileged materials . . . *in camera* provided such action is warranted by the circumstances of the case and the information sought.").  The court will enter a further order after *in camera* review.

THE TRIBE AND MR. RED CLOUD

During the December 2 Hearing, the court ruled the consultant or undisclosed expert issue had not been waived.  (HT p. 56:13-15).  The court directed the Tribe to file a qualified privilege log under the Federal Rules of Civil Procedure to preserve any claim that DeJordy was a consultant or non-disclosed expert.  Id. at pp. 56:23-57:16.  "[T]hat's the way we will approach

the consultant or nondisclosed expert issue raised by Mr. Shultz in today's hearing which I take is an elaboration of the tribe's filing, docket entry number 4." Id. p. 58:5-8.

The Tribe did not file a privilege log to properly preserve the claim and did not address the claim in its reply memorandum following the hearing. See Docket 30.  Rule 26(b)(5) specifically establishes the procedure for a party asserting a claim of privilege to protect trial preparation materials:

> (A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> > (i) expressly make the claim; and
> >
> > (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).  "Because [the Tribe] has yet to produce a privilege log or make any effort to identify potentially privileged documents, despite the fact that it has had ample opportunity to do so, its privilege objections are waived."  Smith v. Gorilla, Inc., CV-10-17-M-DWM-JCL, 2010 WL 4286246 *6 (D. Mont. Oct. 21, 2010).  By not complying with the court's oral directive and Rule 26(b)(5)(A), the Tribe failed to carry its burden of establishing the work product privilege or "consulting expert" privilege. Rabushka, 122 F.3d at 565.

Because the court must analyze complex privilege issues in the unusual setting where there is a pending tribal court case, a South Dakota federal district court case, and an Arkansas federal district court case all with overlapping witnesses and involving many of the same parties and documents, the court fashions a one-more-chance remedy.

## ORDER

Based on the foregoing discussion, it is hereby

ORDERED the Tribe's motion to quash on the basis of tribal sovereign immunity (Docket 3) is denied.

IT IS FURTHER ORDERED that Mr. Gonzalez shall file a declaration on or before **March 3, 2011**, identifying each person set forth in the Law Firm's revised privilege log (Docket 31-1) and each person's specific relationship, if any, with the Law Firm or the Oglala Sioux Tribe, or an entity arguably within the scope of the privilege claims.

IT IS FURTHER ORDERED that Mr. Gonzalez shall deliver to the court's chambers for *in camera* review on or before **March 3, 2011**, copies of the documents, in their entirety, identified in entries 1, 4, 5, 6, 7 and 10 from the revised privilege log (Docket 31-1).

IT IS FURTHER ORDERED that the Oglala Sioux Tribe shall deliver to the court's chambers for *in camera* review on or before **March 10, 2011**, every document, in its entirety, responsive to the subpoenas duces tecum

addressed to the Oglala Sioux Tribe (Docket 29) and Joseph Red Cloud, in his official capacity as an employee of the Oglala Sioux Tribe.  (Docket 27).

IT IS FURTHER ORDERED that if the Oglala Sioux Tribe or Mr. Red Cloud intend to assert an attorney-client or work product privilege for any document delivered to the court's chambers, a privilege log as contemplated by Rule 45(d)(2)(A) shall be filed with the Clerk of Court and served on plaintiff's counsel.

IT IS FURTHER ORDERED that plaintiff shall not file any objections or legal memoranda in response to such privilege log unless invited to do so following the court's *in camera* review.

Dated February 17, 2011.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

35